UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JOHN P. CARWAY,

            **Plaintiff,**

   - against -

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            **Defendant.**
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/14

**OPINION AND ORDER**

**13 Civ. 2431 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

John Carway brings this action pursuant to the Social Security Act (the "Act"),[1] seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB"). Carway requests a finding that he is entitled to disability benefits or, in the alternative, a remand of the case for further proceedings.[2] He also requests an award of attorneys' fees pursuant to the Equal Access to Justice Act.[3] The Commissioner has cross-moved for judgment on the pleadings, arguing that

---

[1]    *See* 42 U.S.C. § 405(g).

[2]    *See* Complaint ("Compl.") at 2.

[3]    *See* 28 U.S.C. § 2412(d)(1)(A).

the Administrative Law Judge's ("ALJ") finding that Carway was not disabled and, therefore, not entitled to DIB during the period under review is supported by substantial evidence and should be affirmed.  For the following reasons, the Commissioner's motion is granted, the decision denying benefits is affirmed, and the case is dismissed.

## II.   BACKGROUND

### A.   Procedural History

#### 1.   The First Application for Disability Benefits

The evidence contained in the administrative record has been summarized by the ALJ in his decision denying DIB.[4]  I will recount only those facts pertinent to this motion.  On August 31, 2004, Carway filed his first application for DIB, alleging disability beginning on April 30, 2004.[5]  Carway's application was initially denied on November 4, 2004.[6]  Following a hearing, the ALJ found that Carway was not disabled.[7]  Carway requested review of the ALJ's

_____

[4]     *See* Transcript of the Administrative Record ("Tr."), filed as part of the Commissioner's Answer pursuant to 42 U.S.C. § 405(g), at 10-21.

[5]     *See id.* at 10.

[6]     *See id.*

[7]     *See id.*

decision by the Appeals Council.[8]  The Appeals Council upheld this determination on September 7, 2006.[9]

### 2. The Present Action

On December 10, 2010, Carway filed another application for DIB, alleging disability beginning October 12, 2005.[10]  Carway's application was initially denied on May 12, 2011.[11]  Carway requested a hearing before an ALJ where Carway, represented by an attorney, appeared and testified by video on March 14, 2012.[12]  On March 27, 2012, the ALJ found that Carway was not disabled.[13]  Carway requested review of the ALJ's decision by the Appeals Council.[14]  That request was denied on February 4, 2013.[15]

### B. The Administrative Record

---

[8]  *See id.*

[9]  *See id.*

[10]  *See id.* at 142-143.

[11]  *See id.* at 87-92.

[12]  *See id.* at 37-69.

[13]  *See id.* at 7-21.

[14]  *See id.* at 32-36.

[15]  *See id.* at 1-6.

-3-

The administrative record consists of non-medical evidence, medical evidence, and hearing testimony.

### 1.    Non-Medical Evidence

Carway, who is now fifty years old, was forty-one at the alleged onset of his disability on October 12, 2005.[16]  He has a twelfth-grade education.[17]  Carway lives with his wife and three school-age children.[18]  Beginning in 1990 and through his retirement due to disability in April 2004, Carway was a police officer, most recently at Rodman's Neck in the Bronx, New York, where he worked as a firearms training instructor and clerical assistant.[19]  Prior to becoming a police officer, Carway also worked as a union carpenter.[20]

In 1997, Carway had surgery to correct the sciatic pain in his back and both of his legs.[21]  He was injured in 2002 after being involved in a police car

---

[16]    *See id.* at 14.

[17]    *See id.*

[18]    *See id.* at 16.

[19]    *See id.* at 43-45.

[20]    *See id.* at 43.

[21]    *See id.* at 51.

accident.[22]  His most recent disability is due to back pain, obesity, and a blood disorder.[23]  At his hearing, Carway claimed that his injuries prevent him from lifting more than ten pounds, walking or standing longer than fifteen to twenty minutes, or sitting for prolonged periods.[24]  He also testified that he only takes pain medication on an as-needed basis as it upsets his stomach.[25]  In describing his daily activities, Carway stated that he is able to shower, cook, shop, watch television, perform light cleaning, and perform childcare duties.[26]  Carway testified that he is also capable of attending sporting events and church on Sunday.[27]  He noted that while he was able to travel to Florida and the Dominican Republic, in 2008 and 2010, respectively for family vacations, he stood during most of the flight.[28]  Carway testified that he occasionally experiences "flare-ups," which he describes as shooting pain down his legs, due to prolonged sitting or standing.[29]  He stated

---

[22]     *See id.*

[23]     *See id.* at 14-16.

[24]     *See id.* at 16.

[25]     *See id.* at 52.

[26]     *See id.* at 55-58.

[27]     *See id.* at 59.

[28]     *See id.* at 16.

[29]     *See id.* at 64-65.

that these incidents may last for a day or two and sometimes require him to use a cane.[30]

### 2.    Medical Evidence

### a.    Treating Physicians

Medical records indicate that Carway has a history of lower back and bilateral leg pain.[31]  Carway saw Dr. John Juliano on a regular basis between June 2005 and September 2005.[32]  Examinations by Dr. Juliano in 2005 showed that Carway exhibited a normal gait and his lower extremities were neurovascularly intact.[33]  Carway's condition was maintained by medication and Dr. Juliano recommended that he seek evaluation from a pain management physician.[34]  From 2007 through 2011, Carway attended only one to two examinations per year.[35]  Carway's March 12, 2007 physical examination was unchanged from the 2005 findings.  Carway next saw Dr. Juliano on February 11, 2008, with reports of an

---

[30]    *See id.*

[31]    *See id.* at 14.

[32]    *See id.*

[33]    *See id.*

[34]    *See id.* at 15.

[35]    *See id.*

exacerbation of his symptoms.  However, there were no new findings upon examination.[36]  On his next visit with Dr. Juliano on September 29, 2008, Carway reported a flare up of lower back pain.[37]  The physical examination showed pain with straight leg raising in the lower back with no radiating symptoms.  Sensory examination was intact in the lower extremities, bilaterally, as was flexion and extension of the knees and ankles.[38]  Dr. Juliano noted that Carway had not undergone any physical therapy in the past year.[39]  Following a trip to Hershey Park which resulted in exacerbated symptoms in his lower back, Carway sought treatment on August 10, 2009.  He did not complain of any leg pain and examination findings remained unchanged with the exception of paralumbar spasm.[40]  Carway returned to Dr. Juliano on February 15, 2010 and August 19, 2010 with complaints of left knee and right leg pain, respectively.  Dr. Juliano advised Carway to seek pain management consultation for possible treatment options rather than solely using narcotic medication.  Heat and a stretching

---

[36]     *See id.*

[37]     *See id*.

[38]     *See id.*

[39]     *See id*.

[40]     *See id*.

program were also recommended.[41]  At a follow-up visit on April 19, 2011, Dr.

Juliano noted Carway's complaints of recently increased back pain.  Dr. Juliano

noted tenderness with spasm in the paralumbar muscles, but no tenderness was

evident with straight leg raising.  Carway reported pain relief with the use of

prescribed medication.[42]  On February 23, 2012, Carway was evaluated due to

complaints of right-sided leg pain.  An examination showed pain with straight leg

raising on the right, none on the left, no tenderness with log roll testing, bilaterally

and intact ankle dorsiflexion and plantar flexion.  Dr. Juliano prescribed Skelaxin

and concluded that there was no need for further imaging studies as Carway had

reported his symptoms were improving.[43]

　　　　Carway has also received treatment in connection with a blood

disorder.[44]  This condition is regulated with anti-coagulation therapy.[45]

Additionally, Carway, at six feet tall and a weight of two hundred and seventy

---

[41]　　　*See id.*

[42]　　　*See id.*

[43]　　　*See id.*  Skelaxin is a muscle relaxant used as an adjunct to rest,
physical therapy, and other measures for the relief of pain and discomfort
associated with acute, painful musculoskeletal conditions.  *See*
http://rxlist.com/skelaxin-drug.htm.

[44]　　　*See* Tr. at 15.

[45]　　　*See id.*

pounds, has been diagnosed as obese and has been advised to pursue a weight loss program.[46]

### b.   Consulting Physicians

On April 11, 2011, in connection with his claim, Carway visited Dr. Mark Johnston for an internal medicine examination.[47]  Dr. Johnston noted that Carway appeared to be in no acute distress, exhibited a normal gait, could heel-toe walk without difficulty, and was able to perform a full squat.[48]  Dr. Johnston opined that Carway had mild restrictions for bending and lifting secondary to chronic back pain.[49]

On February 1, 2012, Carway visited orthopaedic surgeon, Dr. Darryl Antonacci, for a pain management consultation in connection with his claim.[50]  Dr. Antonacci noted that Carway was able to ambulate independently, heel-toe walk,

---

[46]      *See id.* at 16.

[47]      *See id.* at 14, 207-211.  Carway complained of episodes of lower back pain that occasionally radiated to his legs.  He stated that his pain was exacerbated with prolonged sitting and standing and bending or lifting objects.  He reported that he felt relief from pain with the use of medication.

[48]      *See id.* at 208.

[49]      *See id.* at 210.

[50]      *See id.* at 15, 292-302.

and forward bend about seventy degrees, with no report of leg or back pain.[51]  Dr. Antonacci opined that Carway would benefit from a non-operative course of treatment, including Pilates, a weight loss program, the use of anti-inflammatory medication, and a pain management evaluation.[52]

### C.    The ALJ's Decision and Analysis

At step one of his analysis, the ALJ determined that Carway had met the Act's insured status requirements through December 31, 2011, and that he had not engaged in substantial gainful activity since October 12, 2005.[53]  Next, at the second step, the ALJ found that Carway had the following severe impairments, which caused more than minimal functional limitations:  "degenerative disc disease and herniated nucleus pulposus of the lumbar spine, obesity and a genetic blood disorder requiring Coumadin therapy."[54]  At step three, the ALJ determined that Carway did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  The ALJ concluded that the listed impairment requirements had not been met because "[o]bjective findings of record

---

[51]    *See id.* at 293.

[52]    *See id.* at 294.

[53]    *See id.* at 12.

[54]    *Id.* at 13.

have not indicated any significant motor or sensory deficits to sustain the requirements of listing 1.00."[55]

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> except for work requiring lifting and/or carrying objects weighing more than 20 pounds occasionally and 10 pounds frequently. During the course of an 8-hour workday, he would be able to sit and/or stand for a total of 6 hours and walk for a total of 2 hours. The claimant would be able to perform work that did not require more than occasional bending.  He should avoid jobs requiring frequent use of cutting implements due to his use of Coumadin.[56]

The ALJ thus found that Carway was capable of performing past relevant work as a firearms training instructor and clerical assistant for the New York City Police Department.[57]  Because of this conclusion, the ALJ found that Carway was not entitled to benefits.

## III.   LEGAL STANDARD

### A.   Substantial Evidence Standard

In reviewing an ALJ's decision in a disability benefits case, a district

---

[55]     *Id.*

[56]     *Id*.

[57]     *See id*.

court does not conduct a *de novo* review of the ALJ's decision.[58]  The ALJ must set

forth the crucial factors supporting his decision with sufficient specificity,[59] but a

district court must not disturb the ALJ's decision if "correct legal standards were

applied" and "substantial evidence supports the decision."[60]  "Substantial evidence

is 'more than a scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"[61]

   "'To determine whether the findings are supported by substantial

evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be

---

[58] *See Petrie v. Astrue*, 412 Fed. App'x 401, 403 (2d Cir. 2011).  *See also Brickhouse v. Astrue*, 331 Fed. App'x 875, 876 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

[59] *See McCallum v. Commissioner of Soc. Sec.*, 104 F.3d 353 (Table)(2d Cir. 1996); *Ramos v. Barnhart*, No. 02 Civ. 3127, 2003 WL 21032012, at *6 (S.D.N.Y. May 6, 2003).

[60] *Butler v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 1004).  *Accord* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  *Accord Halloran*, 362 F.3d at 31.

[61] *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  *Accord Halloran*, 362 F.3d at 31; *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

drawn.'"[62]  Even if there is substantial evidence for the claimant's position, the Commissioner's decision must be affirmed when substantial evidence exists to support it.[63]  Moreover, the Commissioner's findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from the Commissioner's analysis.[64]

### B.    Five-Step Process

Pursuant to the Act, the Social Security Administration ("SSA") has established a five-step sequential process to determine whether a claimant is disabled.[65]  At step one, the ALJ must decide whether the claimant is engaging in substantial gainful work activity ("SGA").[66]  Generally, if the claimant has earnings from employment above a certain level, he is presumed to be able to

---

[62]    *Tarsia v. Astrue*, 418 Fed. App'x 16, 17 (2d Cir. 2011) (quoting *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999)).

[63]    *See Davila-Marrero v. Apfel*, 4 Fed. App'x 45, 46 (2d Cir. 2001) ("'Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.'") (quoting *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  *See also Morillo v. Apfel*, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001).

[64]    *See Hartwell v. Barnhart*, 153 Fed. App'x 42, 43 (2d Cir. 2005).

[65]    *See* 20 C.F.R. § 404.1520(a)(4).

[66]    *See id.* § 404.1520(a)(4)(i).

engage in SGA and is deemed not disabled.[67]  If the claimant is not engaging in SGA, the analysis continues.

At step two, the ALJ must determine whether the claimant has a "severe" medically determinable impairment or combination of impairments.[68]  An impairment or combination of impairments is severe if it significantly limits the claimant's ability to perform basic work-related activities.[69]  An impairment is not severe when the evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.[70]  If the claimant has a severe impairment or combination thereof, the analysis must proceed.  If no severe impairment is found, the claimant is deemed not disabled.

At step three, the ALJ determines whether the claimant's impairment meets or medically equals the criteria of a listed impairment.[71]  If the impairment is

---

[67]     *See id.* § 404.1520(b).

[68]     *Id.* § 404.1520(a)(4)(ii).  *See also* § 404.1520(c).

[69]     *See id.* §§ 404.1520(c); 404.1521(b) (defining basic work activities).

[70]     *See id.* § 404.1521(a).

[71]     *See id.* Part 404, subpart P, Appendix 1 (hereinafter the "Listings" or "Listing of Impairments").  The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just substantial gainful activity.  *See id.* § 404.1525(a) (stating

-14-

contained in the Listings, the claimant is considered disabled and the Court does not reach steps four or five.[72]  If the impairment does not meet the Listings, the analysis continues.

At step four, the ALJ determines the claimant's RFC,[73] which is "the most [claimant] can still do despite [his] limitations," with respect to past relevant work.[74]  In making this finding, the ALJ must consider all of the claimant's impairments, including any "related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [claimant] can do in a work setting."[75]  Then, the ALJ must determine whether the claimant has the RFC to perform any relevant work that the claimant has done in the past.[76]  If the claimant is unable to do any past relevant work, the analysis proceeds.[77]

At the last step of the evaluation, step five, the ALJ must determine

---

that the purpose of the Listings is to describe impairments "severe enough to prevent an individual from doing any gainful activity").

[72]     *See id.* § 404.1520(d), (a)(4).

[73]     *See id.* § 404.1520(e), 404.1545.

[74]     *Id*. § 404.1545(a)(1).

[75]     *See id.*

[76]     *See id.* § 404.1520(f).

[77]     *See id*.

whether the claimant's RFC, age, education and work experience allow him to perform any other work in the national economy.[78]  If so, the claimant is not disabled.  But if he is unable to do other work, the claimant is disabled.  Although the claimant generally continues to have the burden of proving disability, a limited burden of production shifts to the Commissioner at this step.  To support a finding that the claimant is not disabled at this step, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his RFC, age, education and work experience.[79]

### C.    The "Treating Physician" Rule

Under the "treating physician" rule, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."[80]

---

[78]    *See id.* § 404.1520(g)(1).

[79]    *See id.* §§ 404.1520(g), 404.1560(c).

[80]    *Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)).  *Accord* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

When a treating physician's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive.  These factors include: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.[81]  After considering the above factors, the ALJ must "'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"[82] Failure to provide "'good reasons for not crediting the opinion of a claimant's treating physician'" is grounds for remand.[83]

### D.    Claimant Credibility

An ALJ is permitted to consider an individual's activity level in making a determination of credibility.  The ALJ will consider "all of the medical

---

[81]     *See* 20 C.F.R. § 404.1527(d)(2).

[82]     *Newbury v. Astrue*, 321 Fed. App'x 16, 17 (2d Cir. 2009) (quoting *Halloran*, 362 F.3d at 33).  *See also* 20 C.F.R. § 404.1527(d)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").

[83]     *Newbury*, 321 Fed. App'x at 17 (quoting *Snell*, 177 F.3d at 133). *Accord Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reason' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

and non-medical information in determining credibility."[84]   Additionally, while

"'[a] claimant with a good work record is entitled to substantial credibility when

claiming an inability to work because of a disability,'"[85] the ALJ "'is not required

to accept the claimant's subjective complaints without question; he may exercise

discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record.'"[86]   In weighing the credibility of the claimant's

testimony, his work history is just one of many factors the ALJ may consider.[87]

## IV.   DISCUSSION

### A.   The ALJ's Decision Was Based on Substantial Evidence

Carway argues that the ALJ did not obtain all of the medical records

submitted to the Social Security Administration ("SSA").[88]   Where physician's

---

[84]   20 C.F.R. § 404.1529(c)(3)(i).   *See also Rosado v. Shalala*, 868 F. Supp. 471, 472-73 (E.D.N.Y. 1994) (holding that an ALJ may rely on a claimant's activities of daily living as substantial evidence in support of his determination).

[85]   *Montaldo v. Astrue*, No. 10 Civ. 6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012) (quoting *Horan v. Astrue*, 350 Fed. App'x 483, 485 (2d Cir. 2009)).

[86]   *Id*. (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted)).

[87]   *See id.* (citing *Schaal*, 134 F.3d at 502).

[88]   *See* Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Administrative Record and Pleadings Pursuant to Rule 12(c) F.R.C.P. ("Pl. Mem."), at 6.

reports are inconsistent and where gaps exist in the record, the ALJ has an affirmative duty to develop the medical record and seek out further information.[89] But the ALJ is not required to seek additional information before rejecting a claim when he possesses "a complete medical history" of the claimant.[90]  Moreover, medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.[91]

Here, the medical records reviewed by the ALJ were sufficiently complete and uncontradicted by similar reports during the disputed period to support the decision without additional record development.  Moreover, the records which Carway argues should be included predate the relevant period and are therefore immaterial.  The ALJ noted that Carway was treated for his impairments sporadically and with medication, with no adverse side effects reported.[92]  He also pointed out that no treating source had recommended surgery during the relevant period.[93]  Contrary to Carway's contentions, the ALJ's decision

---

[89]     *See Peterson v. Barnhart*, 219 F. Supp. 2d 491, 494 (S.D.N.Y. 2002) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

[90]     *See id.* (citing *Rosa*, 168 F.3d at 79, n.5) (citations omitted).

[91]     *See Briscoe v. Astrue*, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012).

[92]     *See* Tr. at 16.

[93]     *See id.*

was based on substantial evidence and the ALJ did not err by not obtaining or reviewing earlier records.

### B.    Sufficiency of the ALJ's Evaluation of Carway's Credibility

Carway argues that the ALJ erred in evaluating his credibility.[94]  In this case, the ALJ properly considered Carway's ability to shop, cook, perform light housekeeping chores, and perform childcare duties.[95]  In identifying the basis for his finding on credibility, the ALJ stated that while the evidence in the record reveals impairments that could have reasonably caused the symptoms alleged, it does not "substantiate the allegations of the claimant to the degree alleged."[96]  The ALJ noted that Carway only periodically sought treatment, primarily to obtain medication refills, was treated solely with medication, and that a review of the record did not reveal any notations by treating or examining sources that Carway must refrain from activity.[97]  The ALJ also cites to the physical examinations and radiographic studies which indicate normal stance, intact reflexes, and full strength in lower extremities, with no evidence of any muscle atrophy or neurological

---

[94]     *See* Pl. Mem. at 6.

[95]     *See* Tr. at 17, 208.

[96]     *Id*. at 16.

[97]     *See id*.

deficits, all of which contradict Carway's claims of debilitating pain.[98]  Moreover, the ALJ pointed out that Carway has not complied with the recommended pain management, weight loss program, and physical therapy.[99]  While Carway argues that he could not see the pain management doctor because of an insurance issue, he was referred to such a specialist on more than one occasion.[100]  Additionally, the ALJ points out that since Carway's alleged onset date, no treating or examining source recommended surgery.[101]  Because of the substantial evidence which conflicts with Carway's statements, he is not entitled to a presumption of substantial credibility.  Thus, the ALJ properly determined that Carway's subjective complaints were not fully credible, and sufficiently set forth the grounds in support of his finding.

### C.    Sufficiency of the ALJ's Residual Functional Capacity Finding

Carway argues that the ALJ's RFC assessment is fatally flawed.[102]  Under the five-step process required by the SSA, at step two the ALJ must assess

---

[98]      *See id.*

[99]      *See id.* at 16-17.

[100]     *See id.* at 307.

[101]     *See id.* at 16.

[102]     *See* Pl. Mem. at 13.

the medical severity of the claimant's impairments.[103]  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.[104]  At step two the ALJ properly determined that Carway suffered from degenerative disc disease and herniated nucleus pulposus of the lumbar spine, obesity, and genetic blood disorder requiring Coumadin therapy which constituted a severe impairment under the Regulations.[105]  He then concluded that under step three Carway does not have an impairment or combination of impairments that meets or medically equals an impairment contained in the Listings.[106]

Carway contends that the ALJ did not have medical evidence to support his RFC determination and that he erred as a matter of law in failing to consider the combined effects of his impairments, specifically his obesity.[107]  The ALJ noted that as to the musculoskeletal disorder and obesity, Carway does not experience symptoms or limitations of a severity which meet or medically equal the requirements under the Listings and that objective findings of the evidentiary

---

[103]     *See* 20 C.F.R. § 404.1520(a)(4)(ii).

[104]     *See id*. § 404.1520(c).

[105]     *See* Tr. at 13.

[106]     *See id.*

[107]     *See* Pl. Mem. at 14.

-22-

record did not indicate any significant motor or sensory deficits.[108]  Moreover,

"[a]n ALJ's final determination can constitute an appropriate consideration of the

effects of obesity if it properly weighs evaluations by doctors that have accounted

for the claimant's obesity."[109]  The ALJ properly considered the effects of

Carway's obesity by adopting treating physicians' and consulting physicians'

opinions, which accounted for Carway's obesity when determining his RFC.

Specifically, he noted that Carway had been diagnosed with obesity and that he had

been advised to pursue a weight loss program as the obesity affected his orthopedic

condition.[110]  The ALJ cites to the opinion of Dr. Antonacci which states that due

to the low levels of Carway's pain he considered a nonoperative course of

treatment, including physical therapy, weight loss, and anti-inflammatory

medication.[111]  The ALJ also referred to the opinion of Dr. Johnston who noted that

Carway was able to shower and dress independently, assisted with cooking,

shopping, and childcare duties, appeared in no acute distress, and opined that

Carway had mild restrictions for bending and lifting secondary to chronic back

_____

[108]    *See* Tr. at 13.

[109]    *Paulino v. Astrue*, No. 08 Civ. 2813, 2010 WL 3001752, at *18
(S.D.N.Y. July 30, 2010) (citations omitted).

[110]    *See* Tr. at 16.

[111]    *See id.* at 15, 294.

pain.[112]  Thus, Carway's contention that the ALJ's determination is not supported

by medical evidence and therefore is fatally flawed is rejected.

Before proceeding to step four, the ALJ determined that Carway had

the RFC to perform light work except for work requiring lifting and/or carrying

objects weighing more than 20 pounds occasionally and 10 pounds frequently, sit

and/or stand for a total of six hours and walk for a total of two hours in an eight

hour workday, and occasional bending.[113]

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.[114]

In finding that Carway possessed the RFC to perform light work with certain

limitations, the ALJ noted that he relied on the medical evidence in the record,

Carway's conservative and sporadic course of treatment, Carway's testimony as to

the range of activities he is able to perform, and the opinion of Dr. Johnston.[115]  In

---

[112]     *See id.* at 14, 207-211.

[113]     *See id.* at 16.

[114]     20 C.F.R. § 404.1567(b).

[115]     *See* Tr. at 117.

-24-

light of the ALJ's analysis considering all of Carway's symptoms together with opinion evidence, the ALJ's RFC determination that Carway had the capacity to perform light work is sufficient and well supported by the evidence in the record.

### D.    The ALJ's Step Four Determination

Carway argues that the ALJ's step four determination that Carway can perform his past relevant work as a police officer is not supported by substantial evidence.[116]  Specifically, Carway contends that the ALJ did not inquire into the relevant mental and physical demands associated with his past relevant work.  "In order to determine at step four whether a claimant is able to perform [his] past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities."[117]  In making this determination, "[a]n ALJ may rely on the claimant's statements, which 'are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.'"[118]

---

[116]    *See* Pl. Mem. at 17.

[117]    *Kerulo v. Apfel*, No. 98 Civ. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999).

[118]    *Gittens v. Astrue*, No. 12 Civ. 3224, 2013 WL 4535213, at *10 (S.D.N.Y. Aug. 26, 2013) (quoting *Schrader v. Astrue*, No. 08 Civ. 119, 2010 WL

The ALJ's determination that Carway was capable of performing light work and, therefore, could return to his past relevant work as a firearms training instructor and clerical assistant is well supported by the record evidence.  In finding that Carway's past relevant work did not require the performance of work related activities precluded by his RFC, the ALJ considered the medical evidence as well as Carway's testimony concerning his subjective symptoms.  The ALJ specifically discussed Carway's ability to "sit and/or stand for a total of 6 hours and walk for a total of 2 hours" during the course of an eight-hour workday, and that Carway would be able to perform work that did not require more than occasional bending.[119]  The record shows that the ALJ inquired into the duties involved in Carway's relevant past work.[120]  Specifically, the ALJ noted that Carway's eight-hour workday was comprised of supervising officers during firearm practice at the gun range for one and a half hours and performing clerical duties, including answering phones, taking messages, and checking identifications.[121]  The ALJ also pointed out that Carway was able to alternate

_____

5437249, at *8 (N.D.N.Y. Nov. 4, 2010) (citing SSR 82-62).

[119]    *See* Tr. at 13.

[120]    *See id.* at 45-50.

[121]    *See id.* at 17.

between sitting and standing and there was no significant lifting.[122]  As to

Carway's contention that the ALJ failed to inquire into the mental demands of his

past relevant work, Carway did not allege nor present evidence as to any mental

impairment.  Because the ALJ's step four determination that Carway can perform

his past relevant work is supported by substantial evidence, the opinion of a

vocational expert was not required.[123]

## V.    CONCLUSION

For the foregoing reasons, Carway's complaint is dismissed, his

request for attorneys' fees is denied, the Commissioner's cross-motion is granted,

and the Commissioner's decision finding that Carway is not disabled is affirmed.

The Clerk of the Court is directed to close these motions [Docket Nos. 14 and 20]

and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
       May 14, 2014

---

[122]    *See id.*

[123]    *See Stanton v. Astrue*, 370 Fed. App'x 231, 235 (2d Cir. 2010).  *See also* 20 C.F.R. § 404.1560(b)(2).

-27-

**- Appearances -**

**For Plaintiff:**

Gary James Gogerty, Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd, PLLC
555 Hudson Valley Avenue, Suite 100
New Windsor, NY 12553
(845) 561-0550

**For Defendant:**

Leslie A. Ramirez-Fisher
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2750

Esther Kim
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
(212) 264-2051